James SANDERS, as Personal Representative of the
Estate of Dora E. Ford *v.* John RYLES, et al.

93-964                                          885 S.W.2d 888

Supreme Court of Arkansas
Opinion delivered October 31, 1994

*Price & Basham*, by: *Carey E. Basham*, for appellant.

*Dodds, Kidd, Ryan & Moore*, for appellee.

JACK HOLT, JR., Chief Justice. Appellant, James Sanders, as personal representative of the estate of Dora E. Ford, appeals from an order of the Pulaski County Chancery Court quieting title to property in the appellee, John Ryles, claiming that Ryles's deed from the Commissioner of State Lands ("Commissioner") was not valid because the Commissioner did not provide notice to the true owners of the property (the estate), as required by statute and that the deed of sale should be declared null and void. We accept jurisdiction of this appeal on transfer from the Arkansas Court of Appeals as it involves the interpretation of Ark. Code Ann. § 26-37-201(c) (1987), relating to notice requirements for the sale of tax delinquent property.

At the time of her death in 1987, Dora Ford owned her residence located at 1412 Battery Street in Little Rock. On April 4, 1988, the Pulaski County Probate Court admitted Ms. Ford's will to probate and appointed Clarence Cash executor of her estate, who was later succeeded by the appellant, James Sanders. On December 8, 1989, her residence was certified to the Commissioner for forfeiture and sale because of delinquent taxes for 1986. Thereafter, the land was sold by the Commissioner to the appellee, John Ryles.

Facts surrounding the sale of this property are somewhat fragmented; however, it is apparent from the parties' abstract, exhibits and record of trial that the following occurred:

*March 29, 1990* — The Commissioner sent a certified letter addressed to Mrs. Ford, notifying her that her property had been certified for delinquent taxes, explaining how the property could be redeemed, and informing her that if not redeemed, the property would be sold at public auction on March 31, 1992. The letter was returned to the Commissioner with markings which indicated that it was unclaimed and that Mrs. Ford had moved without leaving a forwarding address.

*March 3, 1992* — A limited title search labeled "Commissioner of State Land's Title Report" was prepared and furnished to the Commissioner by Standard Abstract. That search noted that the estate of Dora E. Ford was in Pulaski County Probate Court, but it did not show the name of the personal representative. The search report stated "Estate of Dora Ella Ford, Probate Order 92-3/9 1/7/92 File #87-767."

*March 20, 1992* — Notice of the sale by auction was certified as published in the Arkansas Democrat-Gazette, noting that the land would be placed for sale by auction on March 31, 1992. No bids were received to satisfy statutory requirements.

*July 30, 1992* — Ryles executed an offer-to-purchase contract with the Commissioner to purchase the Ford property. The contract provided, in part, that the buyer would pay the total taxes, penalties, interest, and costs due to date, plus a minimum bid, if applicable, totaling $7,364.

The contract for sale was executed pursuant to the Commissioner's policy of entertaining offers for private sale 90 days after notice is sent if no satisfactory bids were received.

*July 31, 1992* — Notice of the proposed private sale was sent by the Commissioner to Ralph Washington, notifying him that the lands would be sold on September 1 if he did not exercise his right of redemption. (The Commissioner had received information that Mr. Washington had purchased the residence in question from Ms. Ford's estate, and a second title search listed him as owner.) No other notices of this proposed sale were sent to any parties.

*September 9, 1992* — Sale was consummated and the Commissioner issued a limited warranty deed to appellee John Ryles.

*December 18, 1993* — Appellant James Sanders brings an action in Pulaski County Circuit Court claiming ownership of the Ford property in the estate and asserting that the deed issued by the Commissioner is invalid and constitutes a cloud upon the title to the property which should be declared null and void. Appellee John Ryles responds by filing an answer and counterclaim requesting that title be confirmed, quieted, and vested in him.

As mentioned, the parties entered into various stipulations of fact and to the content of certain exhibits which were presented to the trial court. In addition, Steve Hollowell, the executive assistant to the Commissioner, testified, shedding light on the procedures utilized by the Commissioner in processing the notices and ultimate sale of the Ford property. He related that in order to sell the Ford property, it was necessary that he send notice to her by certified mail to her last known address, advising her that her property would be sold if taxes were not paid, and that it was required that this notice be sent to her at least two years before the sale. To redeem the property, his office would accept payment from her or from an interested party, and for this purpose, he considered interested parties to be lienholders, mortgage holders and heirs.

Mr. Hollowell testified that a letter was sent to Ms. Ford on March 29, 1990, and that "the only notice to the actual record owner is the one certified notice of the two-year notice," however, he further acknowledged that statutory provisions also require that notice be mailed to "interested parties," "if we know about them." In this instance, Mr. Hollowell specifically stated:

> [W]e did a search to determine who "interested parties" are for the purpose of the notice. Sometimes we contract on various parcels and on this parcel, we have a limited title search done by Standard Abstract. That search noted that the estate of Dora Ella Ford was in Pulaski County Probate Court, but it did not show the name of the personal representative, and that "no follow up was done with regard to our notice of the existence of the estate."

Mr. Hollowell related that on March 31, 1992, some two years after the notice was first mailed to Ms. Ford, the property was put up for public sale. Since no bids were received, the Commissioner entertained offers from individuals for private sale. As a result, Mr. Ryles made an offer in July 1992 which was accepted by the Commissioner and sent to the Attorney General for his approval. Subsequent to approval by the Attorney General of the sale, but prior to the issuance of a warranty deed, the Commissioner extended a thirty-day redemption period from the day that the Attorney General's approval was obtained and made a final effort to notify all interested parties by obtaining a follow-up title search. This search reflected a change of ownership in the name of Ralph Washington, and notice was sent to Mr. Washington of the sale and his right of redemption. No other notices were sent. Not having received the petition from Mr. Washington or other interested people, the Commissioner concluded the sale to Mr. Ryles on September 6, 1992, and caused a warranty deed to be issued.

There was also testimony that James Sanders, acting in his individual capacity as an heir to the estate, had attempted to perfect a redemption of the property in March 1992 and had turned in a bid to the Commissioner in July of that same year; however, the Commissioner's office denied any knowledge of Mr. Sanders's application or of his attempt to redeem the property. This factual dispute between the parties is of no significance because

the central issue before us involves statutory notice to the Ford estate.

The trial court found that Mr. Ryles was entitled to have the title to the property confirmed and quieted in him in order that all other claims, particularly those of James Sanders, personal representative of the estate of Dora Ella Ford, be extinguished and declared null and void. We reverse the trial court and remand for further proceedings consistent with this opinion.

This court reviews chancery cases *de novo*, reversing the chancellor only when the findings of fact are clearly erroneous or clearly against the preponderance of the evidence. *Ward* v. *Davis*, 298 Ark. 48, 765 S.W.2d 5 (1989). In cases involving redemption of tax-delinquent lands, we have stated that strict compliance with the requirement of notice of the tax sales themselves is required before an owner can be deprived of his property. *Pyle* v. *Robertson*, 313 Ark. 692, 858 S.W.2d 662 (1993); *Trustees of First Baptist Church* v. *Ward*, 286 Ark. 238, 691 S.W.2d 151 (1985).

Although there are various statutory requirements for notice relating to certification of lands to the Commissioner for forfeiture and sale for delinquent taxes, we need but focus upon Ark. Code Ann. § 26-37-201(c), which provides in pertinent part that:

> [t]he highest bidder shall pay all taxes, interest, penalties, and other costs. Thereafter, all *interested parties* known to the Commissioner and not previously notified shall receive notice by mail of the sale from the Commissioner. (Emphasis added.)

A close reading of this statute gives rise to the question whether, after the Commissioner's sale to Mr. Ryles, all "interested parties" that were known to the Commissioner and not previously notified received notice of the sale by mail. If the answer is no, the chancellor erred as a matter of law and we must declare the deed of sale null and void.

The facts are clear. The existence of the Ford estate was made known to the Commissioner by Standard Abstract from its title search, and neither the administrator nor personal repre-

sentative of the estate was provided any notice either before or after the sale of the property to Mr. Ryles. A later title search which identified another party, Mr. Washington, as the owner of the property prior to the issuance of the deed, did not relieve the Commissioner of his duty to properly notify the Ford estate under the statute.

While Act 626 of 1983, codified as § 26-37-201 (1987) does not define the term "interested parties," it defies logic to proceed on the assumption that potential heirs to lands that are part of an estate would not be parties who are interested in preserving the lands. We recently referred to the term "interested person" in *Pickens* v. *Black*, 316 Ark. 499, 872 S.W.2d 405 (1994), and noted its definition in the Probate Code: "any *heir*, devisee, spouse, creditor, or any other having a property right, interest in, or claim against the estate being administered . . . ." (Emphasis added.) Ark. Code Ann. § 28-1-102(a)(ii) (1987). We can find no logical reason to include heirs in the definition of "interested persons" in Ark. Code Ann. § 28-1-102(a)(ii), then treat them differently for the purposes of the notice requirement in Ark. Code Ann. § 26-37-201(c).

It is also significant that the Commissioner, through the testimony of Mr. Hollowell, defined interested parties "for our purposes" as "lienholders, mortgage holders, *heirs*." (Emphasis added.) In sum, the Commissioner did not give notice to the Ford estate or its representatives after the sale as mandated by our code. The fact that the subsequent title search provided information to the Commissioner that a Ralph Washington had apparently purchased the property from the estate and was sent a notice of redemption is of no moment. The heirs of the Ford estate and its personal representative were, at all times, interested parties, and were known to the Commissioner, yet they did not receive the statutorily-required notice prior to or subsequent to the sale. For this reason, we hold that the chancellor's findings were clearly erroneous.

Reversed and remanded for proceedings consistent with this opinion.